Alex Hagel, OSB No. 226147
Cedar Law LLP
600 1st Ave. Ste. 330, PMB 96563
Seattle, Wa 98104-2246
Ph: (206) 607-8277
Fax: (206) 237-9101
Email: alex@cedarlawllp.com
Attorney for plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| L.G., WHO SUES THROUGH HER PARENT, S.B., | Case No.: |
| Plaintiffs, | COMPLAINT FOR DAMAGES |
| vs. | |
| | DEMAND FOR JURY TRIAL |
| EUGENE SCHOOL DISTRICT 4J, | |
| Defendants | |

Plaintiff L.G., by and through her parent S.B. and through her attorney, alleges as follows:

## I.      PRELIMINARY STATEMENT

1.1      This is a disability discrimination case brought by student L.G., by and through her Mother S.B. (at times, "Parent" or "Mother"), against the Eugene School District 4J ("District" or "Defendant").

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 1 OF 23

1.2    Section 504 of the Rehabilitation Act of 1973 was enacted to eliminate discrimination in education against students with disabilities. This is a broad prohibition of disability discrimination against students with disabilities. *See* 29 § U.S.C. 794.

1.3    In continuing to enshrine its commitment to eliminating disability discrimination, Congress enacted the Americans with Disabilities Act (ADA), creating a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities in critical areas, including education. *See* 42 U.S.C. §12101.

1.4    Over the last fifty years, the federal government has time and again told public schools that they cannot discriminate against students with disabilities. Yet Eugene School District 4J has disregarded this broad mandate, and as a result, L.G. has suffered disability discrimination and retaliation at the hands of this District.

1.5    As a student with multiple disabilities, including an anxiety disorder, sensory integration disorder, speech delay and speech sound disorder, as well as suspected Attention Deficit/Hyperactivity Disorder (ADHD) and suspected learning disability, L.G. is an individual with a disability under Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act (42 U.S.C. § 12131(2)), and the Oregon statute prohibiting discrimination in education (ORS 659.850–ORS 659.860).

1.6    For almost the entirety of the last two school years (2023/2024 and 2024/2025), the District denied L.G. access to her education and created arbitrary barriers to L.G. specifically because of her disability, preventing L.G. from accessing her education and special education services.

1.7    The District had a duty to evaluate L.G. to determine the type and extent of her disability and provide her with the necessary supports and services when the present ones were

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 2 OF 23

**Cedar Law LLP**
600 1st Ave. Ste. 330, PMB 96563
Seattle, WA 98104-2246
alex@cedarlawllp.com
Tel 206.607.8277  |  Fax 206.237.9101

not working. Also, the District had a duty to implement necessary auxiliary aids and services so she could access school like her non-disabled peers. Instead, the District knowingly denied her access to school and created a volatile environment, triggering L.G.'s school refusal symptoms. As a result, the District's actions (and inactions) wholly aggravated her anxiety.

1.8    The level of school-based anxiety, absent school support, became too great for L.G., and she ultimately refused to go to school altogether.

1.9    The District attempted to evade its responsibilities by relying on a school finance regulation to justify shuttering its doors to a disabled student living within its boundaries, harkening back to the dark days before Section 504 and the ADA.

1.10    Now, Plaintiff L.G., by and through her Mother and attorneys, brings this action against Defendant in violation of her rights under Section 504 and the ADA. Plaintiff also brings claims under Oregon statutes prohibiting disability discrimination and retaliation in education.

## II.    PARTIES

2.1    Plaintiff L.G. is currently a nine-year-old student who lives with her Mother in Eugene, Oregon.

2.2    S.B. is the mother and legal guardian of Plaintiff L.G.

2.3    At all material times, Plaintiff was a resident of the City of Eugene in the County of Lane within the State of Oregon.

2.4    Defendant Eugene School District 4J is a public school district located in the County of Lane, City of Eugene, State of Oregon. Pursuant to ORS 332.072, the District is a corporate body that possesses all the usual powers of a public corporation and may sue and be sued and transact business necessary for maintaining and protecting the rights of the District. The District is entrusted with the responsibility for ensuring the rights and protections under the

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 3 OF 23

**Cedar Law LLP**
600 1st Ave. Ste. 330, PMB 96563
Seattle, WA 98104-2246
alex@cedarlawllp.com
Tel 206.607.8277 | Fax 206.237.9101

state Constitution and laws are afforded to students who are entitled to provision of its programs, services, and procedures.

2.5    At the time of the events complained herein, L.G. was a resident student of the District pursuant to ORS 339.133(2)(a).

2.6    The District is a recipient of federal funding from the U.S. Department of Education under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, is a "public entity" as defined by the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., ("ADA"), and is an Oregon public school pursuant to ORS 332.002(2).

### III.    JURISDICTION AND VENUE

3.1    This case arises under Oregon State law, the Oregon State Constitution, federal law, and the federal Constitution.

3.2    This Court has personal jurisdiction over the parties and subject matter jurisdiction for the claims in this complaint pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Oregon State claims under 28 U.S.C. § 1367(a).

3.3    Jurisdiction is also proper in this Court pursuant to ORS 30.275(4) because Plaintiff served tort claims on Defendant on August 25, 2025, by both email and certified mail. Thus, Plaintiff has presented a standard tort claim to Defendant in connection with this lawsuit.

3.4    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because both Parties are in Eugene Division and the events giving rise to this Complaint occurred within the Eugene Division of the U.S. District Court District of Oregon.

3.5    Exhaustion of administrative remedies is inapplicable where, as is the case here, Plaintiff is seeking injunctive relief and monetary damages. *See Perez v. Sturgis Pub. Schs,* 143 S. Ct. 859 (U.S. 2023).

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 4 OF 23

## IV.   FACTUAL ALLEGATIONS

4.1   L.G. is a nine-year-old student with anxiety disorder, sensory integration disorder, speech delay, and speech sound disorder, as well as suspected Attention Deficit/Hyperactivity Disorder (ADHD) and suspected learning disability. Historically, she exhibited severe school avoidance and refusal stemming from her anxiety and sensory disorders.

4.2   L.G. is a student in the Eugene School District 4J, where she has attended Holt Elementary School sporadically since kindergarten (2022-2023 school year).

4.3   L.G. has an Individualized Education Program[1] (IEP). Despite evidence to the contrary, the only area in which the District qualified L.G. for special education services prior to January 2026 was speech.

4.4   S.B. is L.G.'s Mother. L.G. lives with her mother, who has educational decision-making rights.

4.5   L.G.'s father has equal educational decision-making rights with the Mother. He is not a party to this matter.

### L.G.'s Kindergarten Year (2022/2023 School Year)

4.6   Early in L.G.'s kindergarten school year (2022/2023 school year), L.G. began exhibiting school avoidance and school refusal behaviors at school stemming from her anxiety and sensory disorders.

4.7   As a result, she was frequently missing school for long periods of time.

---

[1] An Individualized Education Program is a written statement of an educational program which is developed, reviewed, revised and implemented for a school-aged child with a disability. *See* 34 C.F.R. § 300.320; *See* OAR 581-015-2000(16).

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 5 OF 23

**Cedar Law LLP**
600 1st Ave. Ste. 330, PMB 96563
Seattle, WA 98104-2246
alex@cedarlawllp.com
Tel 206.607.8277  |  Fax 206.237.9101

4.8     During this time, the District did not initiate a special education reevaluation[2] or an evaluation under Section 504, nor implement necessary auxiliary aids and services to address her disability-related behaviors that were impacting her ability to get to Holt.

4.9     To date, the District has never offered or attempted alternative methods of academic engagement with L.G. because of her school refusal.

4.10    Instead, the District merely unenrolled her after a 10-day period.

4.11    According to Elsa Andrew, the Executive Assistant to the Assistant Superintendent of Instruction and Access, the District marks a student as "ATT" and automatically withdraws them from the District after 10 consecutive days of non-attendance.

4.12    According to L.G.'s attendance records, the District unenrolled her on March 8, 2023, because of 10 consecutive days of non-attendance.

4.13    The District continued to make no effort to make the benefits, services, and programs accessible to L.G. during the period of unenrollment. The District never contacted the Mother to initiate a reevaluation or to offer, or attempt to provide, alternative methods of academic engagement, nor to implement necessary auxiliary aids and services.

4.14    L.G. remained unenrolled for the remainder of kindergarten (2022/2023 school year).

**L.G.'s First Grade Year (2023/2024 School Year)**

4.15    At the beginning of L.G.'s 1st grade year (2023/2024), given L.G.'s school

---

[2] A special education evaluation is used to determine whether the child has a disability **and** the nature and extent of the special education and related services that the child needs. *See* OAR 581-015-200(11). A reevaluation must occur every three years and can occur once a year if there are educational or related service needs that warrant a reevaluation or a parent or teacher requests a reevaluation. *See* 34 C.F.R. § 300.303(a).

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 6 OF 23

refusal, the Mother requested a special education evaluation in behavior. The District never responded to this request, nor did it implement necessary auxiliary aids and services.

4.16    L.G.'s school-refusal symptoms persisted and became more severe.

4.17    The Mother would sometimes have to drag or physically carry L.G. into the school building while L.G. was kicking and screaming. L.G. would have meltdowns and large tantrums. This was all witnessed by multiple staff in Holt's front office.

4.18    On several occasions, after the Mother left the building, she observed Kim McManus, the District Student Success Coordinator, physically blocking the exit with her body or holding the door shut to keep L.G. from exiting the building.

4.19    In October 2023, the Mother was contacted by Sydney Stringer, the District's mental health therapist, regarding getting L.G. to school.

4.20    The Mother's email to Ms. Stringer details the barriers of getting L.G. to school based on L.G.'s escalating behaviors to avoid school and the fear she verbally expressed to her Mother about school.

4.21    It became clear that dragging her to school kicking and screaming was having a negative impact on L.G.'s mental health. The Mother did not want to continue to negatively impact L.G.'s mental health by physically dragging her and fighting her to go to school

4.22    In the Mother's October 2023 email to Ms. Stringer, she noted that L.G. needed behavior support and that the District was focused "purely on academics rather than solving [] school refusal."

4.23    The Mother arranged to meet with Ms. Stringer to discuss L.G.'s attendance. During that meeting, Ms. Stringer represented to the Mother that she spoke with Holt administration and L.G.'s teachers about supporting her in getting her comfortable with the

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 7 OF 23

school environment to help with the school refusal. However, no action plan was presented on how the District would do so, nor did the District engage in any type of evaluation to determine the extent of L.G.'s disability-related needs, nor implement necessary auxiliary aids and services.

4.24    On October 25, 2023, despite these ongoing discussions about L.G.'s disability-related school refusal, the District unilaterally unenrolled her after 10 consecutive days of non-attendance.

4.25    The District had not attempted other means of academic engagement and still did not re-evaluate L.G.

4.26    On November 7, 2023, the Mother emailed L.G.'s IEP team to request an urgent IEP meeting "to discuss [L.G.'s] challenges, academic progress, and determine her level of engagement in the classroom." She *again* requested an evaluation in other areas aside from speech.

4.27    The Mother was able to reenroll L.G. on November 15, 2023, but after L.G. continued to school refuse, the District unilaterally unenrolled her from school on December 8, 2023.

4.28    The only support the District provided was the statement that Holt Principal Allan Chinn would help L.G. get out of the car if L.G. refused to walk into the school building, along with advice for the *Mother* to use. Yet again, no one in the District attempted any academic engagement or behavior support to L.G. despite the severe level of school refusal L.G. was exhibiting.

4.29    Eventually, L.G. stopped going to school altogether because of the increased symptoms of anxiety she was experiencing as the Mother attempted to work through the steps to get her to the school. It was clear it was negatively impacting L.G.

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 8 OF 23

4.30    Her father also witnessed that there were behavioral and social-emotional concerns around this time.

4.31    The District continued to make no effort to make the benefits, services, and programs accessible to L.G. during the period of unenrollment. They did not reevaluate her. They did not respond to the Mother's request for a reevaluation, nor implement necessary auxiliary aids and services so that she could access school like her non-disabled peers.

4.32    Despite the District automatically unenrolling her and failing to offer any support to L.G. during this time, the Mother continued to communicate with the school and advocate for support from the District.

4.33    On March 1, 2024, the Mother emailed the school that she would be reenrolling L.G.

4.34    Ms. McManus responded to the email chain (seemingly unaware that the Mother was still part of the email thread) that Holt would need to have a re-entry meeting prior to allowing L.G. to start back up at Holt and asked Principal Chinn to chime in. Principal Chinn responded that he was fine, "requiring mom to have a re-entry meeting if that's what the team wants to do."

4.35    Principal Chinn continued, "I think we'd want to plan ahead of time the goal of the meeting would be, though it's hard to hold mom accountable for attendance when we don't have a truancy office."

4.36    The District staff continued to disregard L.G.'s school refusal symptoms and restricted L.G. from attending until her Mother engaged in a re-entry meeting. They were ignoring any behavioral and social/emotional reasons for L.G.'s school refusal. They did not attempt any academic engagement for L.G. They did not engage in a reevaluation nor implement

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 9 OF 23

Cedar Law LLP
600 1st Ave. Ste. 330, PMB 96563
Seattle, WA 98104-2246
alex@cedarlawllp.com
Tel 206.607.8277  |  Fax 206.237.9101

necessary auxiliary aids and services so that she could access school like her non-disabled peers.

4.37    The Mother, in reading the staff's perspective on the barriers they put up for L.G., felt exasperated and defeated in her advocacy efforts. Still, she persisted for her daughter.

4.38    She called Ms. Stringer to talk to her about the need for L.G. to have additional supports and help to get her back to school.

4.39    The District made no effort to meet L.G. where she was at. They did not initiate a reevaluation to address her disability-related behaviors that were impacting her ability to get to Holt, nor implement necessary auxiliary aids and services so that she could access her education like her non-disabled peers. The District continued to make no effort to make the benefits, services, and programs accessible to L.G. during the period of unenrollment. They did not attempt any academic engagement with L.G.

4.40    L.G. remained unenrolled for the remainder of first grade.

### L.G.'s Second Grade Year (2024/2025 School Year)

4.41    L.G. was set to begin second grade for the 2024/2025 school year.

4.42    Ahead of reenrolling L.G., the Mother emailed Ms. McManus and Principal Chinn on September 11, 2024 to inform them that L.G.'s school anxiety continued to be a major concern.

4.43    The Mother was able to reenroll L.G. five days later.

4.44    In September 2024, L.G. was evaluated at Eugene Pediatrics by Dr. Pilar Bradshaw, who noted that L.G. was presenting with school-based anxiety, and L.G. initiated therapy services with Dr. Katie Hails at Eugene Pediatrics.

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 10 OF 23

4.45    That same month, Penny Hales, an educational advocate, made a request on behalf of the Mother requesting that L.G. be re-evaluated. The District did not reach out to the Mother regarding a consent to evaluate or follow up with the Mother regarding Ms. Hales' email.

4.46    On September 27, 2024, the Mother emailed L.G.'s second-grade teacher, Megan Gullekson, to explain that L.G. continued to worry about school, not having access to the calming room, and asked for additional adult support and interventions.

4.47    On October 1, 2024, case manager Katherine Ankeny emailed the Mother that L.G.'s "IEP is out of date". The Mother responded that L.G. was working with a psychologist because of L.G.'s anxiety, attendance issues, and school-related challenges. Three days later, the Mother emailed Ms. McManus, emphasizing how L.G.'s school-based anxiety and school refusal were getting increasingly worse.

4.48    On October 13, 2024, the Mother emailed the school asking about Ms. Hales' evaluation request. The school psychologist responded that, as of October 14, 2024, they were going to evaluate L.G. because of her anxiety diagnosis.

4.49    Records from Dr. Hails detail L.G.'s appointments and the level of anxiety L.G. was experiencing. L.G. was throwing herself on the floor, crying, almost to the point of vomiting, when the Mother would try to get her to go to school. She was having an increase in angry outbursts, causing her to be aggressive, violent, and sometimes destructive.

4.50    Both the Mother and the Father attended an October 18, 2024 IEP meeting. At that meeting, the Mother expressed concerns with L.G.'s behavioral, social-emotional, and academic concerns. She *again* requested a special education evaluation.

4.51    During this same time, the Mother was reporting to Dr. Hails that L.G. was expressing suicidal ideation, stating she would make statements in the morning before school,

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 11 OF 23

**Cedar Law LLP**
600 1st Ave. Ste. 330, PMB 96563
Seattle, WA 98104-2246
alex@cedarlawllp.com
Tel 206.607.8277  |  Fax 206.237.9101

such as "I would rather be dead," "I want to die," and "I wish I was dead." She was fighting the Mother to go to school at all. When the Mother was able to get L.G. to school, she was late.

4.52    This was extremely concerning to the Mother that her second-grade daughter expressed a desire to *die* rather than go to school.

4.53    In an October 23, 2024 Prior Written Notice[3] (PWN), the District acknowledges that it had received Ms. Hales request for a special education evaluation and the Mother's most recent request. Yet, the District continued to delay the Mother's request for a special education evaluation and continued to fail to implement necessary auxiliary aids and services so that L.G. could access school like her non-disabled peers.

4.54    The Mother, again having grave concerns about L.G.'s school refusal and increased anxiety, requested the District evaluate L.G. for behavior.

4.55    In response, the District again unilaterally unenrolled L.G. on December 10, 2024.

4.56    In a December 11, 2024 PWN, the District wrote that L.G. "is not currently receiving services" due to "a lapse in attendance or 10-day drop from enrollment" and that "services outside of enrollment was considered and rejected as student needs to be enrolled and attending in order to receive services."

4.57    Finally, after years of requesting, the District agreed to reevaluate on December 12, 2024. The Mother signed and returned the consent form on December 16, 2024.

4.58    The Mother had to reenroll L.G. on January 10, 2025.

---

[3] A Prior written notice is a notice that the District must give a parent of a child with a disability prior to proposing or refusing to initiate or change the identification, evaluation, or education placement of a child or a provision of FAPE of the child. *See* 34 CFR § 300.503; *see also* OAR 581-015-2310 (Prior Written Notice).

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 12 OF 23

**Cedar Law LLP**
600 1st Ave. Ste. 330, PMB 96563
Seattle, WA 98104-2246
alex@cedarlawllp.com
Tel 206.607.8277  |  Fax 206.237.9101

4.59    Over four months later, on April 28, 2025, the District sent out a notice that there would be a special education eligibility meeting on May 1, 2025 regarding the evaluation.

4.60    The District, despite clear evidence to the contrary, denied eligibility in all categories except speech, despite citing L.G.'s attendance, behaviors, and academics as a major concern.

4.61    In the midst of all of this, the District, again, unenrolled L.G. on May 2, 2025.

4.62    On May 20, 2025, the District drafted a PWN that stated, "Due to a lapse in attendance or 10-day drop from enrollment, [L.G.] is not currently receiving services."

4.63    On July 16, 2025, Dr. Pilar Bradshaw confirmed that L.G. had been previously diagnosed with Sensory integration disorder, compounding her "anxiety" and school-related behavioral concerns, which have contributed to difficulties with school attendances. Dr. Bradshaw noted that L.G.'s poor "attendance has likely compounded her learning challenges."

4.64    Every time the District unenrolled L.G., the Mother was required to re-enroll L.G. for L.G. to start back up at school. On one occasion, the Mother was told she would need to resubmit paperwork after the Mother had used the limited money she had to get a ride-share to transport her kids to school. The District refused to let L.G. start that day, and the Mother, L.G., and her brother had to walk almost a mile home. L.G. could not access her education or her free lunch that day.

4.65    The District has persistently and actively prevented L.G. from accessing her education, including her special education services, for years, and disregarded her disability-related behaviors despite her Mother's continual advocacy.

4.66    In fact, the Districts actions exist to date. On June 9, 2026, the District, once again, provided a prior written notice stating that "Due to a lapse in attendance or 10-day drop

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 13 OF 23

from enrollment, [L.G.] is not currently receiving services." It went on the say that "Continuing services outside of enrollment was enrollment was considered and rejected as students need to be enrolled and attending in order to receive services."

**Oregon's 10 Day Drop Policy**

4.67    Oregon Administrative Code 581-023-0006 is a state regulation regarding "Student Accounting Records and State Report" regarding school finance.

4.68    This regulation requires Oregon school districts to maintain account records of student enrollment and attendance.

4.69    It states in relevant part that "A student must be withdrawn from the active roll on the day following the tenth consecutive full school day of absence but may be retained on the inactive roll at the district's option." Or. Admin. Code 581-023-0006(4)(b).

4.70    This regulation is colloquially known as the 10-Day Drop Policy.

4.71    Oregon's Department of Education released a flyer for Oregon families regarding the 10 Day Drop Policy. Importantly, it states, "It is important to note that this policy is *not* intended to be punitive. It is simply a requirement for schools to comply with state funding guidelines." (emphasis in the original).

4.72    Despite this being a state regulation regarding school finance, the District weaponized this state regulation and shuttered its doors to a disabled student.

4.73    The Mother filed a due process hearing request regarding the denial of FAPE. The Mother and District have since settled those claims. She is not seeking relief under the IDEA in the present complaint.

4.74    On or about August 25, 2025, the District was provided with a tort claim notice as required by state law.

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 14 OF 23

## V.    CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**DISABILITY DISCRIMINATION IN VIOLATION OF THE**
**AMERICANS WITH DISABILITIES ACT (ADA)**
**42 U.S.C. § 12132**

5.1     Plaintiff L.G. re-alleges and incorporates herein the preceding paragraphs of this Complaint as though set forth in full.

5.2     L.G. is an individual with a disability. Plaintiff's disability substantially limits the major life activities of learning and concentrating. Accordingly, Plaintiff is an individual with a disability under the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12102(1); 28 C.F.R. § 35.108.

5.3     At all relevant times, Defendant is a "public entity" as defined under the ADA, 42 U.S.C. § 12131(1)(A).

5.4     Title II of the ADA prohibits public entities from excluding qualified individuals with disabilities from participation in or denying them the benefits of services, programs, or activities, or otherwise subjecting them to discrimination. 42 U.S.C § 12132.

5.5     The District enjoys no absolute, qualified, Eleventh Amendment, or other immunity with respect to Plaintiff's claim under Title II of the ADA.

5.6     The District excluded L.G. from accessing her education because of her disability-related behaviors and symptoms.

5.7     The District failed to accommodate her disability-related behaviors that were impeding her ability to access her education.

5.8     The District failed to implement necessary auxiliary aids and services, so L.G. could access school like her non-disabled peers.

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 15 OF 23

**Cedar Law LLP**
600 1st Ave. Ste. 330, PMB 96563
Seattle, WA 98104-2246
alex@cedarlawllp.com
Tel 206.607.8277  |  Fax 206.237.9101

5.9     The District unenrolled L.G. from school because of her disability-related behaviors and symptoms.

5.10    The District did not offer her access to education, including educational services because of her disability-related behaviors and symptoms.

5.11    The District set up arbitrary barriers to L.G.'s reenrollment after she was excluded because of her disability-related behaviors and symptoms.

5.12    The District prevented L.G. from reenrolling in school after she was unable to attend because of her disability-related behaviors and symptoms.

5.13    The District failed to make reasonable modifications in policies, practices, or procedures when such modifications were necessary to avoid discrimination.

5.14    Numerous District administrators, officials, and employees had the authority and responsibility to rectify the District's failures but wrongfully failed to take appropriate corrective action.

5.15    At all relevant times, Defendant had knowledge it was substantially likely that their acts and failures to act would harm L.G.'s federally protected right to be free from discrimination, and to enjoy the benefits of the District's services, programs, and activities. Despite this knowledge, the District failed to act upon that likelihood, thereby causing severe and permanent injury to L.G.

5.16    The District's repeated unenrollment of L.G. pursuant to the 10-Day Drop Policy, despite knowledge that her absences were disability-related, constitutes discrimination and denial of meaningful access.

5.17    The District's deliberate indifference in violation of L.G.'s rights under the ADA was a substantial factor in causing L.G.'s heightened school-based anxiety and significantly

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 16 OF 23

**Cedar Law LLP**
600 1st Ave. Ste. 330, PMB 96563
Seattle, WA 98104-2246
alex@cedarlawllp.com
Tel 206.607.8277 | Fax 206.237.9101

impacted her mental health, manifesting in school refusal, withdrawal, and co-occurring symptoms.

5.18     Denial of access to special education caused irreparable harm to L.G. *See N. D. v. Reykdal*, 102 F.4th 982, 994 (9th Cir. 2024); *see also N.D. ex rel. Parents Acting As Guardians Ad Litem v. Hawaii Dep't of Educ.,* 600 F.3d 1104, 1112–13 (9th Cir. 2010).

5.19     As a direct and proximate result of the District's unlawful conduct, L.G. suffered damages as described above.

5.20     Plaintiff L.G. is thereby entitled to recover special and general damages from Defendant.

5.21     The District's deliberate indifference in violation of L.G's rights under the ADA resulted in discrimination against L.G. and denied her meaningful access to her special education and public education in Oregon and resulted in mental harm, thereby entitling her to recover special and general damages from the District in an amount to be shown at trial.

## SECOND CAUSE OF ACTION
## DISABILITY-BASED DISCRIMINATION IN VIOLATION OF
## SECTION 504 OF THE REHABILITATION ACT OF 1973

5.22     Plaintiff L.G. re-alleges and incorporates herein the preceding paragraphs of this Complaint as though set forth in full.

5.23     With respect to District's academic and other programs, L.G. is a qualified individual with a disability within the meaning of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), in that she has a mental impairment that substantially limits her ability to perform one or more major life activities, including learning and concentrating and she meets the essential eligibility requirements for the receipt of educational and other services provided by the District. 29 U.S.C. § 705(20).

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 17 OF 23

5.24    Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, bars all federally funded entities (governmental or otherwise) from discriminating on the basis of disability.

5.25    The District receives federal financial assistance and is covered by Section 504.

5.26    The District enjoys no absolute, qualified, Eleventh Amendment, or other immunity with respect to Plaintiff's claim under Section 504.

5.27    L.G. is an individual with a disability within the meaning of Section 504 because she has physical and mental impairments—including anxiety disorder, sensory integration disorder, speech delay, speech sound disorder, and suspected ADHD and learning disability— that substantially limit one or more major life activities, including learning, concentrating, thinking, communicating, regulating emotions, and attending school.

5.28    L.G. was otherwise qualified to participate in and receive the benefits of Defendant's educational programs and activities.

5.29    The District excluded L.G. from accessing her education because of her disability-related behaviors and symptoms.

5.30    The District failed to evaluate and reevaluate L.G. despite repeated requests and clear evidence of disability related needs.

5.31    The District failed to accommodate her disability-related behaviors that were impeding her ability to access her education.

5.32    The District failed to implement necessary auxiliary aids and services so that L.G. could access school like her non-disabled peers.

5.33    The District unenrolled L.G. from school because of her disability-related behaviors and symptoms.

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 18 OF 23

**Cedar Law LLP**
600 1st Ave. Ste. 330, PMB 96563
Seattle, WA 98104-2246
alex@cedarlawllp.com
Tel 206.607.8277 | Fax 206.237.9101

5.34    The District did not offer her access to education, including educational services, because of her disability-related behaviors and symptoms.

5.35    The District prevented L.G. from reenrolling in school after she was unable to attend because of her disability-related behaviors and symptoms.

5.36    The District weaponized Oregon's 10-Day Drop Policy in a manner that disproportionately and discriminatorily impacted L.G. because of her disability.

5.37    Numerous District administrators, officials, and employees had the authority and responsibility to rectify the District's failures but wrongfully failed to take appropriate corrective action.

5.38    At all relevant times, Defendant had knowledge it was substantially likely that their acts and failures to act would harm L.G.'s federally protected right to be free from discrimination, and to enjoy the benefits of the District's services, programs, and activities. Despite this knowledge, the District failed to act upon that likelihood, thereby causing severe and permanent injury to L.G.

5.39    The District's deliberate indifference in violation of L.G.'s rights under Section 504 was a substantial factor in causing L.G.'s heightened school-based anxiety and significantly impacted her mental health, manifesting in school refusal, withdrawal, and co-occurring symptoms.

5.40    The District had actual knowledge that L.G.'s absences and behaviors were disability-related and she required evaluations, supports, and accommodations, yet repeatedly failed to act.

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 19 OF 23

5.41    Denial of access to special education caused irreparable harm to L.G. *See N. D. v. Reykdal*, 102 F.4th 982, 994 (9th Cir. 2024); *see also N.D. ex rel. Parents Acting As Guardians Ad Litem v. Hawaii Dep't of Educ.,* 600 F.3d 1104, 1112–13 (9th Cir. 2010).

5.42    As a direct and proximate result of Defendant's conduct, L.G. suffered emotional distress, exacerbation of anxiety symptoms, educational harm, denial of access to education, and other damages.

5.43    Plaintiff L.G. is thereby entitled to recover special and general damages from Defendant.

5.44    The District's deliberate indifference in violation of L.G's rights under Section 504 resulted in discrimination against L.G. and denied her meaningful access to her special education and public education in Oregon and resulted in mental harm, thereby entitling her to recover special and general damages from the District in an amount to be shown at trial.

### THIRD CAUSE OF ACTION
### OREGON'S PROHIBITION OF DISABILITY DISCRIMINATION AND RETALIATION IN EDUCATION
### ORS 659.850—ORS 659.860

5.45    Plaintiff L.G. re-alleges and incorporates herein the preceding paragraphs of this Complaint as though set forth in full.

5.46    A school district, as defined by ORS 659.852(a)(A), is prohibited from discrimination against anyone based on their disability.

5.47    The District is a place of public accommodations within the meaning of Oregon Law.

5.48    L.G. is a person with a disability under Oregon Law.

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 20 OF 23

**Cedar Law LLP**
600 1st Ave. Ste. 330, PMB 96563
Seattle, WA 98104-2246
alex@cedarlawllp.com
Tel 206.607.8277  |  Fax 206.237.9101

5.49    ORS 659.860 provides a private right of action for any person claiming to be aggrieved by unlawful discrimination prohibited and seeking damages, as well as reasonable attorney fees to the prevailing party.

5.50    The District excluded L.G. from accessing her education because of her disability-related behaviors and symptoms.

5.51    The District failed to accommodate her disability-related behaviors that were impeding her ability to access her education.

5.52    The District failed to implement necessary auxiliary aids and services so that she could access school like her non-disabled peers.

5.53    The District unenrolled L.G. from school because of her disability-related behaviors and symptoms.

5.54    The District did not offer her access to education, including educational services because of her disability-related behaviors and symptoms.

5.55    The District prevented L.G. from reenrolling in school after she was unable to attend because of her disability-related behaviors and symptoms.

5.56    Numerous District administrators, officials, and employees had the authority and responsibility to rectify the District's failures but wrongfully failed to take appropriate corrective action.

5.57    At all relevant times, Defendant had knowledge it was substantially likely that their acts and failures to act would harm L.G.'s federally protected right to be free from discrimination, and to enjoy the benefits of the District's services, programs, and activities. Despite this knowledge, the District failed to act upon that likelihood, thereby causing severe and permanent injury to L.G.

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 21 OF 23

**Cedar Law LLP**
600 1st Ave. Ste. 330, PMB 96563
Seattle, WA 98104-2246
alex@cedarlawllp.com
Tel 206.607.8277 | Fax 206.237.9101

5.58    The District's actions were intentional and/or taken with reckless disregard for L.G.'s rights.

5.59    The District's deliberate indifference in violation of L.G.'s rights under ORS 659.850(a)(A) was a substantial factor in causing L.G.'s heightened school-based anxiety and significantly impacted her mental health, manifesting in school refusal, withdrawal, and co-occurring symptoms. Plaintiff L.G. is thereby entitled to recover special and general damages from Defendant.

5.60    The District retaliated against L.G. by disenrolling her, excluding her from academic or extracurricular activities, and taking other adverse actions, including imposing arbitrary barriers and preventing her from reenrolling in the District pursuant to ORS 659.852.

5.61    The District's retaliation substantially disadvantaged L.G. by preventing her from accessing academic and extracurricular activities.

5.62    The District's deliberate indifference in violation of L.G's rights under ORS 659.850(a)(A) and ORS 659.852 resulted in discrimination and retaliation against L.G. and denied her meaningful access to public education in Oregon, and resulted in mental harm, thereby entitling her to recover special and general damages from the District in an amount to be shown at trial.

5.63    As a result, Plaintiff is entitled to all remedies available under ORS 659A.885, including compensatory damages, equitable relief, and attorneys' fees.

## VI.    RESERVATION OF RIGHTS

6.1    Plaintiff reserves the right to assert additional claims as may be appropriate following further investigation and discovery.

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 22 OF 23

## VII.    PRAYER FOR RELIEF

7.1    Plaintiff requests relief as follows:

7.1.1    For judgment against Defendant for state and federal civil rights violations;

7.1.2    For judgment against Defendant for all general and special damages in amounts to be proven at the time of trial;

7.1.3    Preliminary injunctive relief permanently enjoining the District from automatically unenrolling L.G. as a result of her disability-related symptoms.

7.1.4    For an award of costs and attorney fees under 42 U.S.C. § 12205, 29 U.S.C. § 794, and ORS 659.860(7), and any other applicable provisions of federal and state law; and

7.1.5    For pre and post interest judgment at the highest lawful rate; and

7.1.6    For such other and further relief as the Court may deem just and equitable.

## VIII.    JURY DEMAND

8.1 Under the Federal Rules of Civil Procedure, Plaintiff demands that this action be tried before a jury.

Dated this 23rd day of June, 2026.

CEDAR LAW LLP

Alex Hagel, OSB No. 226147
600 1st Ave. Ste. 330, PMB 96563,
Seattle, WA 98104-2205
(206) 607-8277 [tel]
(206) 237-9101[fax]
alex@cedarlawllp.com
Attorney for Plaintiffs

COMPLAINT FOR DAMAGES
CASE NO.
PAGE 23 OF 23

**Cedar Law LLP**
600 1st Ave. Ste. 330, PMB 96563
Seattle, WA 98104-2246
alex@cedarlawllp.com
Tel 206.607.8277  |  Fax 206.237.9101